The opinion of the court was delivered by
Biles, J.:
There are two ways of committing aggravated burglary under K.S.A. 2015 Supp. 21-5807(b): a person can either “enter into” or “remain within” the dwelling. Michael C. Daws was *786 convicted of aggravated burglary after a homeowner returned to discover the front door kicked in and Daws inside. The jury was instructed it had to find Daws “knowingly entered ... a residence . . . without authority . . . with the intent to commit theft... at the time there was a human being in the dwelling.” (Emphasis added.) In other words, the jury was instructed as to the first of the two ways of committing aggravated burglary. Daws argues his conviction should be reversed because the evidence is undisputed that the homeowner was not in the dwelling when he entered it.
The Court of Appeals affirmed his conviction based upon its existing caselaw that the victim does not have to be in the dwelling at the time defendant enters it—so long as the victim arrives before defendant leaves. State v. Daws, No. 108,716, 2013 WL 5925960, at *3-5 (Kan. App. 2013) (unpublished opinion), rev. granted January 15, 2015. A majority of this court reverses the aggravated burglary conviction and overrules the line of cases the Daws panel relied on. See State v. May, 39 Kan. App. 2d 990, Syl. ¶ 1, 186 P.3d 847, rev. denied 287 Kan. 768 (2008); State v. Romero, 31 Kan. App. 2d 609, 610-12, 69 P.3d 205 (2003); State v. Fondren, 11 Kan. App. 2d 309, 310-12. 721 P.2d 284, rev. denied 240 Kan. 805 (1986); State v. Reed, 8 Kan. App. 2d 615, 616-19, 663 P.2d 680, rev. denied 234 Kan. 1077 (1983). Under the aggravated burglary statute and these facts, the State should have charged Daws with “remaining within” the dwelling, which it did not do.
Factual and Procedural Background
During the middle of the day on November 20, 2011, Raul Flores Ramos stopped by the house he was moving out of. The front door was shut, but it had been kicked in and the door jamb broken. He entered and discovered Daws in the living room. Ramos told Daws to leave, and Daws complied. Afterwards, Ramos discovered some boxes had been moved around and property removed from them. Ramos also noticed two grocery bags containing property that did not belong to him. The State charged Daws with aggravated burglary based on the intent to commit theft. The information alleged Daws “did unlawfully without authority enter into *787 a building . . . which is a dwelling, in which there was a human being, to wit: Raul Flores, with the intent to commit a theft therein.” (Emphasis added.)
At trial, Daws admitted he was in the house. He testified he saw someone kick in the front door, followed that person inside, and then stayed for a night because he thought the house was abandoned. Daws confirmed Ramos found him inside the next day and that he left when asked. Daws testified he never intended to take any property.
At the jury instruction conference, Daws requested a lesser included offense instruction for simple burglary because the victim was not in the house when Daws entered it. The State argued it did not matter when the victim was in the house as long as he was there while the burglary was occurring. The district court refused the simple burglary instruction, noting “the caselaw does not differentiate” between circumstances when the victim was present at the time of entry or arrived later.
Consistent with the charge as described in the information, the jury was instructed on aggravated burglary based on the State’s theory that Daws “knowingly entered a building” without authority. This instruction was consistent with PIK Crim. 4th 58.130, and stated in relevant part:
“To establish this charge, each of the following claims must be proved:
1. That the defendant knowingly entered a building ... which is a dwelling;
2. That the defendant [ ] Daws did so without authority;
3. That the defendant did so with the intent to commit Theft therein;
4. That at the time there was a human being in the dwelling, to-wit: Raul Flores; and
5. That this act occurred on or about the 20th day of November, 2011, in Wyan-dotte County, Kansas.”
The district court also issued what is referred to as the any/any reasonable doubt instruction, which states in relevant part:
“The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty.” (Emphasis added.)
*788 The jury convicted Daws of aggravated burglary. The district court sentenced Daws to the standard term in the applicable grid box, factoring in his criminal history score.
Daws timely appealed to the Court of Appeals, raising five issues: (1) There was insufficient evidence of aggravated burglary because the victim was not present upon entry; (2) the district court should have instructed the jury on simple burglary; (3) the district court erroneously denied a motion for mistrial; (4) the jury was improperly instructed on reasonable doubt; and (5) the district court violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used Daws’ criminal history to enhance his sentence. The Court of Appeals affirmed in Daws, 2013 WL 5925960, at *5-9.
Daws petitioned for this courts review of all his claims except the denial of the motion for mistrial. We granted review, and jurisdiction is proper. See K.S.A. 60-2101(b) (review of Court of Appeals decisions).
Before proceeding, we note the last two issues have already been decided adversely to Daws in other cases. We upheld the “any/any” reasonable doubt instruction in State v. Herbel, 296 Kan. 1101, 1124, 299 P.3d 292 (2013) (“While the older PIK instruction used in Herbels trial was not the preferred instruction, it was legally appropriate.”). And, as Daws concedes, this court has repeatedly held the State is not required to prove a defendant s criminal history to the jury beyond a reasonable doubt. See, e.g., State v. Hall, 298 Kan. 978, Syl. ¶ 6, 319 P.3d 506 (2014). We dispose of those latter two issues based-on these prior decisions.
Reversal of the Aggravated Burglary Conviction
Aggravated burglary requires a human beings presence in the dwelling, but the crime can be committed either by “entering into” or “remaining within” the structure. Since Daws was convicted under the “entering into” means, the issue is whether his conviction must be reversed because there was no human being present in the house when he entered it.

*789
Standard of Review

When sufficiency of the evidence is challenged, an appellate court reviews all evidence in a light most favorable to the prosecution. The court must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. State v. Williams, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

Discussion

The distinction between burglary and aggravated burglary is that aggravated burglary requires an additional element—the presence of a human being. Compare K.S.A. 2015 Supp. 21-5807(a) and K.S.A. 2015 Supp. 21-5807(b). The aggravated burglary statute provides:
“Aggravated burglary is, without authority, entering into or remaining within any building, manufactured home, mobile home, tent or other structure, or any vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is a human being with intent to commit a felony, theft or sexually motivated crime therein.” (Emphasis added.) K.S.A. 2015 Supp. 21-5807(b).
“[T]he phrases ‘entering into’ and ‘remaining within’ refer to legally distinct factual situations.” State v. Gutierrez, 285 Kan. 332, Syl. ¶ 2, 172 P.3d 18 (2007). Stated another way, these phrases constitute alternative means of committing the crime. State v. Frierson, 298 Kan. 1005, 1011, 319 P.3d 515 (2014). The entering into element is satisfied when the evidence shows a defendant crossed the plane of a building’s exterior wall. In contrast, the remaining within element refers to a defendant’s presence in the building’s interior after entry has occurred. Gutierrez, 285 Kan. at 337. Both situations may take longer than a mere moment, but “remaining within connotes at least briefly continuous behavior.” 285 Kan. at 337-38.
The focus on these alternative means is dictated by the State’s decision to prosecute Daws for unlawfully entering the dwelling, as opposed to pursuing the alternate approach that Daws committed aggravated burglary by remaining within the dwelling. He argues *790 that under the State’s entering into theory, a human being must be present when tire defendant enters the building. And since it is undisputed that the homeowner was not present when Daws entered, he contends there is insufficient evidence to support his conviction.
The Court of Appeals caselaw the Daws panel relied on to affirm the conviction under these facts stems from State v. Lora, 213 Kan. 184, 515 P.2d 1086 (1973). In Lora, the defendant was convicted of two counts of aggravated burglary based on a fact pattern in which Lora was lying in wait to commit rape when the victims returned home. Lora argued it was error to convict him of aggravated burglary because there were no persons present when he entered the house. The Lora court quickly disposed of this challenge based on the language of the aggravated burglary statute.
It held the convictions were proper because of “the provision in this statute which in tire alternative proscribes knowingly and without authority ‘remaining within any building ... in which there is some human being, with intent to commit a felony . . . [therein.]’” 213 Kan. at 195. Notably, the Lora court did not address how the jury was instructed, but an earlier portion of the decision indicates the State charged both means. Accordingly, the Lora courts holding, at the veiy least, implies that the person must be present at the time of entry when convicting under the entering into means. Otherwise, it would have been unnecessary to cite the remaining within means of committing aggravated burglary to uphold Lora’s conviction. See 213 Kan. at 195. This would seem to answer the question presented, but the Court of Appeals interpreted Lora differently when presented with this issue in Reed, 8 Kan. App. 2d 615, and that interpretation has been applied by that court ever since.
In Reed, the homeowner returned to discover burglars, and the two defendants were charged with aiding and abetting “ ‘entering into a building . . . occupied during the time of said entrance’ ”— even though the State conceded no one-was inside when the burglars entered. 8 Kan. App. 2d at 616. A divided panel upheld tire convictions, holding that a charge of aggravated burglary “need not specify the point in time at which a victim was present so long as it is alleged that a human being was present sometime during the *791 course of the burglary.” (Emphasis added.) 8 Kan. App. 2d at 618-19.
The majority relied on dicta from a different issue in Lora distinguishing between aggravated burglary and burglaiy based on the additional requirement that the place be occupied “ ‘during the course of the burglary.’” 8 Kan. App. 2d at 617. And this language was taken out of context and was seemingly viewed as meaning that tire aggravated burglary continues until the burglar vacates the premises. The majority also referred to the PIK instruction Notes on Use that stated: “‘When a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary.’” 8 Kan. App. 2d at 617 (quoting PIK Crim. 2d 59.18, Notes on Use).
Notably, this PIK statement remains in the current version of the instruction and suffers from a lack of citation to any authority. See PIK Crim. 4th 58.130, Notes on Use. But the statement does not misstate the law because, as this court held in Lora, aggravated burglary has been committed if a person enters before the defendant leaves under die remaining within means. 213 Kan. at 195. Nevertheless, the PIK statement is confusing because it fails to distinguish between the two means of ’committing aggravated burglary. In other words, the statement is too broad if read to apply to both means, which appears to be how the Reed panel interpreted it.
Regarding Lora, the Reed majority held: “Despite Lora’s apparent reliance on the ‘remaining within’ clause, it is our conclusion that the rationale of the opinion need not confine its holding.” 8 Kan. App. 2d at 618. It further held that the “troublesome language of the statute” concerning remaining within relates “to the timing of the burglar’s formation of intent rather than the victim’s presence.” 8 Kan. App. 2d at 618.
The tipping point for' the Reed panel majority seems to be its conclusion that the victim -suffers the same danger regardless of whether he or she is present when the burglar enters or when he or she arrives later. The panel wrote:
“The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary when there is the possibility of contact between the *792 victim and the burglar and the accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building. 8 Kan. App. 2d at 616.
Judge Rees dissented. He would have held there was insufficient evidence of aiding and abetting aggravated burglary because the victim was not present when the burglars entered the building. 8 Kan. App. 2d at 622. (Rees, J. dissenting). And he criticized the majority for suggesting the burglary was not completed until the accused exits the premises, noting this conflicted with the statute’s plain language. 8 Kan. App. 2d at 622-23. Judge Rees would have held that the statute requires the victim’s presence at the time the defendant enters when convicting under the entering into means. 8 Kan. App. 2d at 624 (“The temporal requirement concerning the presence of the [victim] is precisely the link that elevates a burglary to an aggravated burglary”).
Judge Rees’ dissent never gained traction. Subsequent decisions from the Court of Appeals, including Daws, have Followed Reed. See May, 39 Kan. App. 2d at 993; Romero, 31 Kan. App. 2d at 610-12; Fondren, 11 Kan. App. 2d at 310-12; State v. Montgomery, No. 108,164, 2014 WL 349558, at *4-6 (Kan. App. 2014) (unpublished opinion), rev. granted; remanded to Ct. of App. (April 21, 2016); Daws, 2013 WL 5925960, at *3-5.
Even so, the rule has differed slightly between panels and that suggests an infirmity. For example, the May panel stated: “We have consistently held that the presence of a person in a structure at any time during a burglary constitutes aggravated burglary.” 39 Kan. App. 2d at 993. While in Fondren, tire panel held that “[t]he occupancy requirement is satisfied so long as there are human beings present when the ulterior felony or theft is committed.” 11 Kan. App. 2d at 311. Both rationales are questionable although die flaw is more obvious in Fondren, which undeniably reads an element into aggravated burglary that is not present—the commission of the ulterior felony. It becomes clear that'the May panel’s holding suffers from die same flaw when one attempts to define “during a burglary.” Such statements suggest aggravated burglary is not complete until the defendant vacates the premises, which is contraiy to the statute’s plain language. See K.S.A. 2015 Supp. 21-5807(b).
*793 As charged and instructed in this case, aggravated burglary is defined as “without authority, entering into . . . any building ... in which there is a human being with intent to commit. . . theft. . . therein.” K.S.A. 2015 Supp. 21-5807(b) (no charge on instruction made for remaining within). A defendant is not required to commit the ulterior crime to complete the aggravated burglary. See K.S.A. 2015 Supp. 21-5807(b); see also State v. Shinn, No. 112,118, 2015 WL 4366534, at *3 (Kan. App. 2015) (unpublished opinion) (holding the defendant “did not have to successfully commit a theft; he only had to intend to do so” to commit aggravated burglary). And because aggravated burglary is complete once unauthorized entry occurs, the Court of Appeals view impermissibly extends the crime until the burglar leaves or completes the ulterior felony. See State v. Phillips, 295 Kan. 929, 944-45, 287 P.3d 245 (2012) (aggravated robbery complete when defendant takes possession of victim s property, so prosecutors closing argument misstated the law by saying crime not complete until defendant left the premises).
It is “a basic premise of Anglo-American criminal law that the physical conduct and state of mind must concur.” 1 LaFave, Substantive Criminal Law § 6.3(a), p. 451 (2d ed. 2003) (discussing actus reus and mens rea). In tire context of aggravated burglary, this idea is embodied in this courts holdings drat “[t]o support a conviction for aggravated burglary, the intent to commit a felony and tire unauthorized entering into or remaining within must at some point in time coexist.” Gutierrez, 285 Kan. at 338-39; see also State v. Bowen, 262 Kan. 705, 709, 942 P.2d 7 (1997) (“The specific intent in an aggravated burglary, where one is charged with entering into the dwelling without authority, must exist at the time of the unauthorized entry.”).
But the aggravated burglary statute s human presence element is not governed by this rule because it does not involve the required physical conduct (entering into) or the state of mind (intent to commit the ulterior crime). The human presence element is more aptly described as an attendant circumstance. See 1 LaFave, Subst. Crim. L. § 6.3(b). When the elements of a criminal statute include an attendant circumstance, that attendant circumstances must concur with the other elements. 1 LaFave, Subst. Crim. *794 L. § 6.3(b) p. 455 (“With crimes which require physical conduct, mental fault, and attendant circumstances, the circumstances must concur with the conduct and fault.”)- To hold otherwise collapses the two means of committing aggravated burglary.
In light of the uncontroverted testimony that Daws spent a day inside the victims home before the homeowner returned, the remaining within means of committing aggravated burglary was the appropriate charge. Since the jury was only instructed on the entering into means of committing aggravated robbery and the victim was not present when Daws entered the residence, we hold there was insufficient evidence to sustain the aggravated burglary conviction and reverse that conviction. This necessarily requires us to overrule Reed and its progeny as they relate to the crime of aggravated burglary when the defendant is only charged with unauthorized entering into a building or residence and another person is not present at that time. Based on this, it is unnecessaiy to address the remaining issue concerning the defendant’s request for a simple burglary instruction.
Accordingly, we reverse the Court of Appeals decision that affirmed the district court and reverse the challenged conviction for aggravated burglary.
* ⅞ ⅜